Argued and submitted June 9, 1990, the decision of the Court of Appeals vacated and
case remanded to the Court of Appeals for further consideration July 5, 1991

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## DONALD BALFOUR,
*Petitioner on Review.*

(TC C8801-30735; CA A49467; SC S36884)

814 P2d 1069

Martin W. Reeves, Portland, filed the petition and argued the cause for petitioner on review.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the response were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Mary Burns Tomlinson, Lake Oswego, filed a brief for *amicus curiae* Oregon State Bar.

GILLETTE, J.

## GILLETTE, J.

In each of four cases that were consolidated for the purposes of decision before the Court of Appeals, appointed counsel for an indigent appellant determined that there were no meritorious issues on which to base an appeal. In three of the cases, counsel moved to withdraw; in the fourth, the Court of Appeals raised the issue of withdrawal on its own motion. The Court of Appeals declined to permit counsel to withdraw. *State v. Balfour,* 100 Or App 1, 784 P2d 1103 (1989). Review was sought only in the lead case, which is a criminal appeal. We conclude that counsel need not withdraw in such cases. We vacate the decision of the Court of Appeals and remand the case for further consideration.

The specific circumstances of the four consolidated cases are described in the Court of Appeals' opinion and do not require iteration here. *See State v. Balfour, supra,* 100 Or App at 5-7 (reciting facts). The following summary statement of the Court of Appeals is sufficient to set the stage for its decision:

> "For this opinion, we consolidate *State v. Balfour,* CA A49467 (criminal), *State v. Briant,* CA A49492 (mental commitment), *Thomas and Thomas,* CA A49798 (criminal contempt), and *State ex rel Juv. Dept. v. Stock,* CA A50805 (termination of parental rights). They are representative of others pending in this court. The standards and procedures for disposing of motions to withdraw as counsel are the same regardless of the type of case. This decision is limited to cases in which an indigent has a right under the United States Constitution to appointed counsel, regardless of whether there is a separate Oregon constitutional or statutory basis for appointment of counsel. * * *"

*Id.* at 5. The Court of Appeals concluded that counsel should not be permitted to withdraw from representation under the circumstances then present, and it detailed generally applicable requirements that counsel must fulfill before withdrawal might be possible, based on that court's understanding of the requirements of federal constitutional case law. *Id.* at 10. We allowed review to address the important questions involved.

We address in this opinion the ethical and federal constitutional[1] obligations of Oregon appointed appellate counsel in a criminal appeal when counsel determines that only non-meritorious arguments exist on which to base an appeal.[2] We conclude that in such circumstances counsel need not seek to withdraw. We hold that the continued presence of counsel in the appeal is ethically permissible. We set out hereafter procedures that we believe are constitutionally adequate, governing the prosecution of an appeal from the filing of a notice of appeal to a decision by the Court of Appeals.

The decisional backdrop against which we consider the issues presented by this case is a fairly well defined and limited universe of cases. The first decision of consequence dealing with counsel's desire to resign from an appeal that has, so far as counsel can discern, no merit is *Anders v. California*, 386 US 738, 87 S Ct 1396, 18 L Ed 2d 493 (1967). That decision was followed chronologically by *State v. Horine*, 64 Or App 532, 669 P2d 797, *rev den* 296 Or 237 (1983), in which the Court of Appeals outlined certain procedures to be followed in such cases in the Oregon Court of Appeals, while acknowledging that the procedures were at variance with the procedures described in *Anders*. In 1988, the Supreme Court of the United States decided *McCoy v. Court of Appeals of Wis.*, 486 US 429, 108 S Ct 1895, 100 L Ed 2d 440 (1988), and *Penson v. Ohio*, 488 US 75, 109 S Ct 346, 102 L Ed 2d 300 (1988). The Oregon Court of Appeals, in this case, viewed *McCoy* and *Penson* as the death knell for the procedures that it had approved in *State v. Horine*. The court revised the requirements for attorney resignation accordingly.

Each of the rationales for the decisions in the cases cited is a significant piece of the challenge that we confront today, which is to configure a system of practice in Oregon's appellate courts that will accommodate the ethical obligations of counsel; satisfy the federal constitutional requirements of effective representation, substantial equality, and

---

[1] No issue under the Oregon Constitution is raised by these cases.

[2] In this opinion we shall refer interchangeably to "non-meritorious," "no merit," "no meritorious," "frivolous," "wholly frivolous," and "no nonfrivolous" issues or arguments. The terms refer to issues or arguments that counsel has a general ethical obligation not to advance, a subject that is discussed fully in the text below.

fair process for indigent appellants; and serve the perceived needs of an effectively administered appellate decision-making process. We therefore examine the cases in some detail.

As noted, *Anders v. California, supra,* is the starting point for any decision in this area. The pertinent facts in *Anders* are as follows:

> "After he was convicted of the felony of possession of marijuana, petitioner sought to appeal and moved that the California District Court of Appeal appoint counsel for him. Such motion was granted; however, after a study of the record and consultation with petitioner, the appointed counsel concluded that there was no merit to the appeal. He so advised the court by letter and, at the same time, informed the court that petitioner wished to file a brief in his own behalf. At this juncture, petitioner requested the appointment of another attorney. This request was denied and petitioner proceeded to file his own brief *pro se.* The State responded and petitioner filed a reply brief. On January 9, 1959, the District Court of Appeal unanimously affirmed the conviction.

> "On January 21, 1965, petitioner filed an application for a writ of habeas corpus in the District Court of Appeal in which he sought to have his case reopened. In that application he raised the issue of deprivation of the right to counsel in his original appeal because of the court's refusal to appoint counsel at the appellate stage of the proceedings. * * *"

386 US at 739-40 (citation omitted).

The Supreme Court of the United States began its analysis by referring to a continuing line of its cases that had established the right to counsel for a criminal defendant on appeal and further had established the principle that the basic nature of appellate review for a criminal defendant cannot depend on the defendant's financial status. 386 US at 741-42. The Court then set forth its holding, which has come to be known as the *"Anders* brief" requirement:

> "The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of *amicus curiae.* The no-merit letter and the procedure it triggers do not reach that dignity. Counsel should, and can with honor and without conflict, be of more

assistance to his client and to the court. His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court — not counsel — then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal."

386 US at 744. (Footnote omitted.)

The *Anders* holding is significant in three material aspects: First, it determined that the California procedure then in use (*i.e.,* the so-called "no merit letter") was inadequate under the federal constitution; second, the Court established the appropriate procedure (the so-called *Anders* brief); and third, the Court stated its rationales. Only the third aspect requires further elaboration.

*Anders* held that the California procedures violated the due process and equal protection provisions of the Fourteenth Amendment: "We have concluded that California's action does not comport with fair procedure and lacks that equality that is required by the Fourteenth Amendment." 386 US at 741. *See also* 386 US at 744 (discussing the "constitutional requirement of substantial equality and fair process"). Following its description of the *Anders* brief, the Court re-emphasized its constitutional purpose, *viz.,* to assure equality for indigent appellants:

"This requirement would not force appointed counsel to brief his case against his client but would merely afford the latter that advocacy which a non-indigent defendant is able to obtain. * * * This procedure will assure penniless defendants the same rights and opportunities on appeal — as nearly as is practicable — as are enjoyed by those persons

who are in a similar situation but who are able to afford the retention of private counsel."

386 US at 745. *See also Ross v. Moffitt,* 417 US 600, 611-12, 94 S Ct 2437, 41 L Ed 2d 341 (1974) (recognizing: (a) that constitutionally cognizable unfairness or lack of equality results when an indigent appellant is denied meaningful access to the appellate system because of poverty and (b) that absolute equality is not necessarily required, so long as indigent appellants have an adequate opportunity to present claims fairly within the appellate system).

The Oregon Court of Appeals in *State v. Horine, supra,* considered for the first time in Oregon the issue addressed in *Anders v. California.* In *Horine,* counsel for the defendant in a criminal appeal had filed a brief that essentially stated only that counsel "fails to discern any meritorious issues for appeal, and invites the Court to search the record for possible error." 64 Or App at 534. Counsel simultaneously filed a motion to withdraw. *Id.* The Court of Appeals declined to apply mechanically the *Anders* decision and adopted procedures for practice before it that were similar to, but not the same as, the California procedures disapproved in *Anders.* The Court of Appeals essentially predicted that the Supreme Court of the United States would, when given the opportunity, re-examine and modify its *Anders* rationale. Because the Court of Appeals proved to be a poor prognosticator, we need not examine its rationales. The court held that the following practice would be adequate under the federal constitution:

> "When appointed counsel has made such a determination [that an appeal would be without merit] and has notified this court and the appellant, the appellant will be allowed to raise whatever issues he or she chooses to raise. If the appellant appropriately raises issues before this court, we will consider those issues as we would otherwise do. If the appellant *pro se* raises no issues, the conviction will be affirmed. We will not search the record for error any more than we do in other criminal appeals."

64 Or App at 547.

The court then elaborated on those procedures, describing with particularity how it would handle the issue of withdrawal and the court's own decision-making process:

"Because appellant here has not been given notice of the brief filed by counsel, we will suspend further consideration of this appeal until counsel has furnished appellant with a copy of the brief and has offered to make the appellate record available to appellant for his own review. Appellant should be informed that, within 30 days of the date of service of the brief upon him, he may notify the court, through his present counsel or by himself, whether he wishes to proceed with the appeal. If we do not receive such notification within that period, we will affirm the judgment below. If the requisite notice is given this court by appellant, we will issue an order permitting him to proceed *pro se* and fixing a time for the *pro se* brief to be filed. In that event, counsel's appointment will be terminated effective on the date of notice or on the date when the record has been transmitted to appellant, whichever is later. In the event that counsel is unable to serve appellant due to lack of knowledge of his whereabouts, after due diligence in attempting to inform appellant, counsel shall notify this court of that fact and the appeal will be dismissed as abandoned."

64 Or App at 548-49.

This court denied review in *Horine*. 296 Or 237, 675 P2d 490 (1983). A petition for certiorari was filed in the Supreme Court of the United States but was withdrawn before final Supreme Court action on the petition. 466 US 934, 104 S Ct 1932, 80 L Ed 2d 477 (1984). The Oregon Court of Appeals noted in the present case that, since *Horine* was decided, no defendant has notified the Court of Appeals that the defendant wished to proceed with the appeal *pro se* following submission of a no-merit letter by counsel. *State v. Balfour, supra,* 100 Or App at 7 n 1.

In 1988, the Supreme Court of the United States decided *McCoy v. Court of Appeals of Wisconsin, supra.* In *McCoy,* appointed appellate counsel challenged a rule of the Wisconsin Supreme Court that essentially restates the requirement of an *Anders* brief — that counsel's submission must refer to anything in the record that might arguably support an appeal — but adds a requirement that the brief also include "a discussion of why the issue lacks merit." 486 US at 430. Counsel asserted that the additional requirement in the rule was inconsistent with *Anders* and that it forced

counsel to violate the client's Sixth Amendment rights. *Id.* at 431.

In compliance with *Anders,* appellant's counsel in McCoy

> "prepared a brief that can fairly be characterized as schizophrenic. In his role as an advocate for appellant, counsel stated the facts, advanced four arguments for reversal, and prayed that the conviction be set aside. In his role as an officer of the court, counsel stated that further appellate proceedings on behalf of his client would be frivolous and without any arguable merit * * * and prayed that he be permitted to withdraw. * * * Thus, in the same document, the lawyer purported to maintain that there were arguments warranting a reversal and also that those arguments were wholly without merit."

486 US at 432. Counsel, however, refused to comply with the requirement of the Wisconsin rule that he discuss why the issues he raised lacked merit. *Id.*

The Supreme Court of the United States made and repeated two fundamental points throughout the opinion. First, the Court stated that "an attorney, whether appointed or paid, is * * * under an ethical obligation to refuse to prosecute a frivolous appeal." 486 US at 436. Second,

> "the fact that an appointed appellate lawyer may find it necessary to file a motion to withdraw because he or she has concluded that an appeal is frivolous does not indicate that the indigent defendant has received less effective representation than the affluent. We categorically rejected that suggestion in *Polk County v. Dodson,* 454 US 312[, 102 S Ct 445, 70 L Ed 2d 509] (1981)."

486 US at 437.

Elaborating, the Court stated that appointed counsel has the same professional responsibility as retained counsel to conduct a thorough and competent review of the record in the client's interest. "Only after such an evaluation has led counsel to the conclusion that the appeal is 'wholly frivolous' is counsel justified in making a motion to withdraw. This is the central teaching of *Anders.*" 486 US at 438-39. (Footnote omitted.) The true issue in *Anders,* the court suggested, was

whether a state appellate court may "refuse to provide counsel * * * on the basis of a conclusory statement by the appointed attorney on appeal that the case has no merit * * *." 486 US at 439 n 11. An *Anders* brief "was designed to provide the appellate courts with a basis for determining whether appointed counsel have fully performed their duty to support their clients' appeals to the best of their ability. * * *. Thus, the *Anders* brief assists the court in making the critical determination whether the appeal is indeed so frivolous that counsel should be permitted to withdraw." 486 US at 439. (Footnote omitted.)

This emphasis on determining whether counsel has adequately performed counsel's professional responsibilities is what the Supreme Court in 1988 perceived the emphasis of *Anders* to have been in 1967. In fact, this gloss on *Anders* does not cite to supporting text in *Anders* and is — in our reading — a shift from the principal stated intention of *Anders*, which was to ensure fairness of process and substantial equality for indigent appellants under the Fourteenth Amendment. *McCoy* includes a Sixth Amendment challenge, which is not expressly addressed in *Anders*, and appears to be geared toward harmonizing the Fourteenth Amendment concerns expressed in *Anders* with the additional Sixth Amendment context of the challenge to the court rule in *McCoy*. The Court stated its overall view of the federal constitutional concerns as follows:

> "* * * [T]he *Anders* brief is designed to assure the court that the indigent defendant's constitutional rights have not been violated. To satisfy federal constitutional concerns, an appellate court faces two interrelated tasks as it rules on counsel's motion to withdraw. First, it must satisfy itself that the attorney has provided the client with a diligent and thorough search of the record for any arguable claim that might support the client's appeal. Second, it must determine whether counsel has correctly concluded that the appeal is frivolous."

486 US at 442.

The Court then held that the Wisconsin rule facilitates those two requisite determinations and does not violate any ethical obligations of counsel or any federal constitutional rights of an indigent defendant to representation by

counsel. *Id.* at 444. *McCoy* thereby approved, but did not mandate, the requirement of the Wisconsin Supreme Court rule that an *Anders* brief must additionally discuss why an issue lacks merit.

*McCoy* was followed early in the next term of the Court by *Penson v. Ohio, supra.* In *Penson,* appointed appellate counsel certified to the Ohio Court of Appeals that he had carefully reviewed the record, that he had found no errors requiring appellate action, and that, having already filed a notice of appeal, counsel would not pursue a meritless appeal. At the same time, counsel filed a motion seeking to withdraw. One week later, the Ohio Court of Appeals entered an order allowing counsel to withdraw, granting the indigent appellant 30 days in which to file a *pro se* appellate brief, and stating that thereafter the court would independently view the record to determine whether any error existed that required corrective appellate action. The Ohio Court of Appeals denied the indigent appellant's request for the appointment of a new attorney, and the appellant ultimately filed no brief. The independent review of the Ohio Court of Appeals resulted in reversal of the appellant's conviction on one count due to a plain error in the jury instructions and affirmance of the appellant's convictions and sentence on remaining counts. 488 US at 77-79.[3]

The Supreme Court in *Penson* found that the Ohio procedures were constitutionally defective in view of *Anders v. California.* Far from taking the opportunity to limit the procedural requirements of *Anders,* the Supreme Court treated those requirements as a stringent benchmark against which to gauge the state procedures.

The Court held that the Ohio Court of Appeals erred in granting leave to withdraw, for three reasons. First, the motion failed to draw attention to anything in the record that might arguably support the appeal, as required by *Anders.* 488 US at 80. Second, the Ohio Court of Appeals erred by acting on the motion to withdraw "before it made its own

---

[3] The procedures used in Ohio, as described in *Penson,* are quite similar to those approved by the Oregon Court of Appeals in *State v. Horine,* 64 Or App 532, 669 P2d 797, *rev den* 296 Or 237 (1983), with the exception that Ohio requires an independent *de novo* review of the record by the Ohio Court of Appeals before a decision on the merits; Oregon procedure under *Horine* entailed no such requirement.

examination of the record to determine whether counsel's evaluation of the case was sound." *Id.* at 82-83. Finally, the Ohio court erred "by failing to appoint new counsel to represent petitioner after it had determined that the record supported 'several arguable claims.' " *Id.* at 83. The Court reiterated that the rationales for its decision were the same as those articulated in *Anders* and *McCoy*. *Id.* at 81-85.

*Penson* made it clear that the tactical retreat from *Anders* anticipated by the Oregon Court of Appeals in *State v. Horine* had instead become an aggressive holding action. Faced then with the question of withdrawal of counsel in these consolidated cases arising after *McCoy* and *Penson,* the Oregon Court of Appeals in this case reassessed its position and announced the following procedures pursuant to its view of the federal constitutional requirements and the felt needs of an effective system of appellate decision-making:

> "* * * [I]n any case in which an indigent party has a constitutional right to appointed counsel, counsel will not be permitted to withdraw on the ground that the appeal lacks merit unless *all* of these conditions are satisfied: (1) Counsel has conscientiously reviewed the trial court record and conducted appropriate research and has determined that there are no meritorious issues to be raised on appeal; (2) counsel has talked with the trial counsel and the defendant, and neither has identified any arguably meritorious issue; (3) the defendant has not identified any reviewable issue, meritorious or otherwise; and (4) counsel has filed a brief (not merely a memorandum or a motion) complying with the Oregon Rules of Appellate Procedure.[2]

> "In circumstances under which counsel may not withdraw, we hold that counsel must at least inform the court of every issue that the defendant wants raised, even though the Supreme Court has held that, in the exercise of professional judgment, counsel may choose not to raise even meritorious issues. *See Jones v. Barnes,* 463 US 745, 103 S Ct 3308, 77 L Ed 2d 987 (1983). However, we believe that the defendant and the court will be served better by counsel's filing a brief that raises the issues that the defendant wants to assert, even if those issues are, in counsel's judgment, frivolous or absurd. If there are facts in the record that contradict the defendant's view of the facts or there are no facts in the record to support the defendant's view, counsel shall say that in the brief. Similarly, if counsel believes that any legal

argument is controlled by adverse statutory or case law, counsel likewise shall draw the court's attention to that authority in the same manner that counsel is required to do in any kind of case. What we cannot do is to relieve counsel from the responsibility of filing any brief whatsoever, unless the defendant agrees.

"[2] Even though the Oregon Rules of Appellate Procedure provide that the court will consider only errors preserved in the lower court, ORAP 7.19(4), that provision is not applicable to *Anders* cases."

*State v. Balfour, supra,* 100 Or App at 9-10. (Emphasis in original.)

Following its decision in *State v. Balfour,* the Court of Appeals further clarified the holding quoted above, in response to a host of varied practices that sprang up in the wake of its decision in *Balfour:*

"[*Balfour*] apparently has led some counsel to conclude that withdrawal from a case will be permitted if counsel cannot identify what he considers to be a meritorious issue and files a brief *either* raising nonmeritorious issues (and explaining why those issues lack merit) *or* stating that neither appellate counsel, trial counsel nor the client has identified any issues whatsoever. *Balfour* apparently failed to make clear enough that counsel will be allowed to withdraw *only* in the latter situation, that is, when neither appellate counsel, trial counsel nor the client has identified *any* issue to be raised on appeal.

"Moreover, some counsel have construed the requirement that counsel draw the court's attention to adverse evidence (or the absence of evidence) in the record or to adverse authority as a requirement that counsel brief the case against the client.

"Misinterpretation of *Balfour* (or our failure to make our holding clear) has resulted in many instances of briefs that identify possible errors and then follow that, in some cases, with several pages of text explaining why those issues have no merit. Those briefs typically conclude with an invitation to the court to search the record for error and a request for leave to withdraw. We did not intend that appointed counsel ever brief a case against the client; that is the role of opposing counsel. We intended that counsel do what is ethically required. If counsel has identified an error or issue that the

client wants raised (or an issue that counsel has identified but believes has no merit), the brief should discuss it in a manner as favorable to the client as is ethically possible.

"No brief should conclude with a request for leave to withdraw or with an invitation to the court to search the record for error. If counsel believes that he is entitled to withdraw, the request should be in the form of a motion, not a brief. The motion should demonstrate that counsel has conscientiously reviewed the trial court record and conducted appropriate research and has determined that there are no meritorious issues to be raised on appeal, that counsel has talked with trial counsel and the client and that neither has identified any issue, meritorious or otherwise."

*State v. Thompson,* 103 Or App 240, 243-44, 797 P2d 378 (1990). (Footnote omitted; emphasis in original.)

The Court of Appeals procedures set out first in *State v. Balfour* and then amplified in *State v. Thompson* describe ethically and constitutionally permissible, if not necessarily ethically and constitutionally mandated, procedures for *counsel* to comply with in cases where counsel concludes that there are no meritorious issues for appeal. *Balfour* and *Thompson* are silent, however, on the nature of any Court of Appeals review of the record to determine whether counsel's assessment of the appeal as frivolous is correct. *Penson,* particularly, suggests that something more than mere review of the motion may be required before counsel may be permitted to withdraw. 488 US at 82-83.

The 1988 decisions of the Supreme Court of the United States that impelled the Oregon Court of Appeals to reexamine its earlier decision in *State v. Horine* added no new federal constitutional requirements to the pre-existing requirements announced in *Anders v. California.* Indeed, the Supreme Court reaffirmed the constitutional necessity of the procedures first described in *Anders.* Still, and although the Court of Appeals response to *Penson* and *McCoy* may have been a natural one, it is not necessarily the only permissible one.

The issue of constitutional dimension in the Supreme Court cases has remained a question of what representation the federal constitution requires for an indigent

appellant in a criminal case once appointed counsel conscientiously concludes that there are only frivolous issues on which to base an appeal. That issue, in turn, has been considered essentially in the context of the propriety of an appellate court's permitting appellate counsel to withdraw from the representation. We will consider first the ethical and then the constitutional dimensions of the problem.

Although the Supreme Court of the United States may, of course, set federal constitutional limits on state regulation of attorney practices, *see, e.g., In re Primus,* 436 US 412, 98 S Ct 1893, 56 L Ed 2d 417 (1978) (setting First Amendment limits on the authority of the states to regulate attorney solicitation), the Supreme Court is not the arbiter of ordinary questions of ethical practices for attorneys in state court, except where those ethical practices implicate federal constitutional concerns.[4] In Oregon, that task ultimately falls to this court in its application of the Oregon Revised Code of Professional Responsibility (Code). Thus, we are neither bound nor relieved of our own duty in the matter by the United States Supreme Court's prior estimations of the proper ethical course of action for an appointed appellate attorney who concludes that only frivolous issues exist for appeal.[5]

■　　We conclude that an appointed attorney in an appeal in Oregon who, after a diligent examination of the whole record and appropriate consultation with defendant and trial counsel, is faced with a conclusion that only frivolous issues exist for appeal, has no mandatory ethical obligation to withdraw from the representation. We reach this conclusion in spite of the fact that the Code provides that a lawyer may not ethically "[k]nowingly advance a claim or defense that is

---

[4] As we read them, the ethical discussions in *Anders v. California,* 386 US 738, 87 S Ct 1396, 18 L Ed 2d 493 (1967), *Penson v. Ohio,* 488 US 75, 109 S Ct 346, 102 L Ed 2d 300 (1988), and *McCoy v. Court of Appeals of Wis.,* 486 US 429, 108 S Ct 1895, 100 L Ed 2d 440 (1988), are not themselves constitutionally based.

[5] The Supreme Court of the United States has, in addition to its own judgment, relied on the ABA Standards for Criminal Justice and the Informal Opinions of the ABA Standing Committee on Ethics and Professional Responsibility, as it has vacillated among the conclusions that an attorney *may* seek to withdraw, *should* seek to withdraw, or has a *duty* to seek to withdraw. *See McCoy v. Court of Appeals of Wis., supra* note 4, 486 US at 436. The Supreme Court has not to this date considered what the ethical obligations may have been in a particular case under the pertinent state's disciplinary code.

unwarranted under existing law, except that [the lawyer] may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law." DR 7-102(A)(2). We also are mindful of the rule that a lawyer must seek to withdraw if "[t]he lawyer knows or it is obvious that the lawyer's continued employment will result in violation of a Disciplinary Rule." DR 2-110(B)(2). But appointed counsel who concludes that only frivolous claims or defenses are available to be advanced on appeal, and who so advises the client, has no concomitant ethical duty to seek to withdraw, because counsel has not to that point knowingly advanced a frivolous claim or defense before the court within the terms of the Code. We agree with the United States Supreme Court's oft-repeated assertion that an appointed criminal appellate attorney may ethically apprise an appellate court that the attorney has discerned no nonfrivolous issues for appeal. *See, e.g., McCoy v. Court of Appeals of Wisconsin, supra,* 486 US at 437.

■ If DR 2-110(B)(2) (mandatory withdrawal) does not apply, a lawyer *may* seek to withdraw if the client "[i]nsists upon presenting" a frivolous claim or defense. DR 2-110(C)(1)(a). We conclude, however, that, in the context of an appeal by an indigent appellant, the appointed appellate counsel has no duty to withdraw (or seek to withdraw) from the representation if the client insists on presenting a frivolous claim or defense. The attorney's ethical obligation is not to advance *personally* the frivolous claim or defense. DR 7-102(A)(2). Counsel who follows the procedure we set out, *post,* for briefing in such situations will not be personally advancing frivolous claims on a defendant's behalf.

We turn to the question of what appointed counsel is ethically required to do, when there is no ethical duty to withdraw but there also is no nonfrivolous issue available to argue for defendant. *State v. Horine, supra,* approved a "no-merit letter," simply apprising the appellate court and the client of counsel's conclusion that there were no nonfrivolous issues to present. 64 Or App at 547. *Anders v. California, supra,* held that California's similar "no-merit letter" was not adequate and that "counsel should, and can with honor and without conflict, be of more assistance to his client and to the court," 386 US at 744, hence the requirement of the

*Anders* brief in which counsel must refer to anything that might arguably support the appeal.

We do not believe that the ethical relationship of Oregon counsel to client or court is furthered at all by compelling counsel to spell out the potentially limitless variety of "arguably supportive" issues that counsel can fabricate or discern. Moreover, as was recognized in *State v. Horine, supra,* 64 Or App at 541, and so vividly illustrated in *McCoy* (where the Supreme Court itself characterized counsel's *Anders* brief as "schizophrenic," 486 US at 432), the rules respecting *Anders* briefs require counsel to take an unnatural, if not unethical, posture. In our view, to require an *Anders* brief in Oregon, where counsel is not ethically required to withdraw under DR 7-102(A)(2) and DR 2-110(B)(2), would not advance the administration of justice, inasmuch as the Oregon appellate courts no longer will be called upon to consider whether to permit counsel to withdraw. Neither, we believe, would the *Anders* brief promote fidelity to or the zealous and competent representation of indigent appellants.

■　　Because Oregon appointed appellate counsel have no ethical obligation to withdraw and, derivatively, no ethical obligation to file an *Anders* brief, the question becomes whether the federal constitution requires an *Anders* brief in the circumstances that we describe here, *i.e.,* where counsel in a criminal appeal no longer will be required, ethically, to withdraw, anyway. We conclude, based on the Supreme Court cases, that the federal constitution requires an *Anders* brief only when counsel seeks *to withdraw.*

The constitutional problem presented by the motion to withdraw is the potential for an indigent appellant to proceed unrepresented by counsel through the criminal appeal, in potential violation of the appellant's right to be represented by counsel on essentially equal terms with an appellant who can afford to hire counsel. *See, e.g., Penson v. Ohio, supra,* 488 US at 84; *McCoy v. Court of Appeals of Wisconsin, supra,* 486 US at 435; *Anders v. California, supra,* 386 US at 745.

If, however, counsel does not seek to withdraw, the core constitutional concerns for which the *Anders* brief were

designed disappear. First, there will be no danger of the indigent appellant's proceeding unrepresented through the appeal. Second, the appellate court will not need an *Anders* brief to assess whether to permit counsel to withdraw, because counsel will not have withdrawn. Finally, appropriate procedures, other than an *Anders* brief, can meet *Anders'* central concern — that an indigent appellant in a criminal case shall receive legal representation and meaningful access to appellate review on terms essentially equal to the representation and access available to a nonindigent appellant.

■■    With the continued presence of counsel in the appeal, we must consider under what conditions that presence will assure an indigent appellant that requisite equality both of representation by counsel and access to appellate review that will satisfy the due process and equal protection concerns raised in this context. *See, e.g., Anders v. California, supra,* 386 US at 745; *Douglas v. California,* 372 US 353, 356-57, 83 S Ct 814, 9 L Ed 2d 811 (1963). We now hold that the procedures for the Oregon courts, for appeals of right by indigent persons with a constitutional right to counsel in their criminal appeal, shall be those set out below:

(1)    Appointed appellate counsel shall file a timely notice of appeal (if one has not been filed before counsel was appointed) in all appeals in which the client wishes to take an appeal.

(2)    Appointed counsel shall review thoroughly the record and discuss the case with trial counsel and the client.

(3)    If counsel thereafter determines that there are no meritorious issues for appeal, counsel nonetheless shall seek to provide the "active advocacy" demanded by *Anders* to the fullest extent ethically possible. That can be done by filing an appellant's brief with the court that meets the following standards.

(4)    The appellant's brief shall be divided into two sections, Section A and Section B. Section A of the appellant's brief shall contain a statement of the case, including a statement of facts, sufficient to apprise the court of the jurisdictional basis for the appeal. *See* ORAP 5.40(1) to 5.40(4). Section A, under those circumstances, shall contain no assignments of error or argument.

(5) Counsel shall also determine whether the client seeks to raise with the court any issue that the lawyer has determined to be frivolous. If the client does not seek to raise any issue, then the appellant's brief shall be comprised solely of Section A, as described above.

(6) If the client seeks to raise one or more issues with the court that counsel considers to be frivolous, the brief shall contain a presentation of the issue or issues in a Section B. Section B of the appellant's brief, under those circumstances, shall raise any claim of error requested by the client.

(7) Counsel shall provide the client with appropriate legal advice on these claims of error, but shall present to the court in the brief the issue that the client seeks to raise in the manner that the client seeks to raise it. In so doing, counsel's role is limited to attempt to see to it that the client states the issues and arguments in proper appellate brief form and the brief is timely filed.

(8) Counsel shall sign Section A of the brief, and the client shall sign Section B of the brief. The Section B presentation does not constitute "advancing" a frivolous claim and does not, therefore, violate either DR 7-102(A)(2) or DR 2-110(B)(2). Neither does the Section B presentation, signed by the client but not by counsel, subject counsel to sanctions pursuant to ORAP 1.40 (adopting ORCP 17 as a basis for appellate sanctions).

■ Section B assignments of error are to be submitted without oral argument, unless, otherwise ordered by the court. ORAP 6.05(2) (if one party appears *pro se* in the Court of Appeals, "the case will be submitted without argument by any party").

■ If counsel has discerned no meritorious issues for appeal, counsel need not seek to withdraw on that basis and, if counsel nonetheless seeks to withdraw on that basis, the Court of Appeals need not permit withdrawal on that basis. If the client requests counsel to file a brief that contains claims that counsel considers to be frivolous, those claims shall be presented in Section B of the brief.

■ The Court of Appeals shall consider and decide whatever issues are raised in these appeals in the same manner as

it considers and decides issues that are raised in any other direct criminal appeal. The Court of Appeals is not required to search the record for error, whether an appeal is filed by a person who has appointed counsel or retained counsel, because a defendant represented by retained counsel would not necessarily receive such a review on appeal. *See Jones v. Barnes,* 463 US 745, 751, 103 S Ct 3308, 77 L Ed 2d 987 (1983) (defendants, indigent or not, have no right to compel counsel to press even a *non-frivolous* issue requested by a client, if counsel decides as a matter of professional judgment not to raise the issue). Rules regarding preservation of error, *see* ORAP 5.45(2), which typically relate to *trial practice* and the effects of trial practice on appealability, and which might be interpreted liberally if a person had proceeded *pro se* at *trial,* shall apply as they normally would in any appeal.[6] *See also* OEC 103(4) (evidentiary plain error rule).

Under the procedures outlined above, indigent appellants in criminal appeals are afforded: A notice of appeal; a state-paid transcript; appointed counsel charged with conducting a good faith, professional, thorough review of the case as the client's advocate; appointed counsel raising all issues for review according to counsel's exercise of professional and ethical judgment in the client's best interest; an opportunity for the client to raise any issue, with legal advice from counsel, notwithstanding the professional and ethical judgment made by the counsel that defendant's arguments are frivolous; and a Court of Appeals decision made on the same basis as in any appeal.

■ Counsel's continued presence in the appeal insures that an appellant will not be deprived of an "active advocate" by court order or otherwise. And the availability, by law, of a separate post-conviction proceeding, *see* ORS 138.510 *et seq.,* wherein the defendant may challenge the constitutional adequacy of appellate counsel and is provided separate, court-appointed counsel to assist defendant in doing so, provides an effective ultimate means of safeguarding a defendant's constitutional right to adequate assistance of counsel. This separate post-conviction process is a constitutionally sufficient

---

[6] The statement to the contrary by the Court of Appeals in this case is disapproved. *See State v. Balfour,* 100 Or App 1, 10 n 2, 784 P2d 1103 (1989).

additional safeguard to assure that appellate counsel's judgment that there are no non-frivolous issues for appeal was correct. With these procedures in place, review of the entire record by the appellate court in the direct appeal is not required.

■ This appellate structure provides the indigent appellant with at least the same rights that an appellant with the funds to hire counsel would have, *i.e.*, an advocate on the appellant's behalf active to the permissible ethical limit. We have carefully reviewed the pertinent federal decisions and conclude that this result — professional representation in the client's behalf, and equality of both representation and access to appellate review — conforms to the mandates of the Sixth Amendment right to counsel and the Fourteenth Amendment rights to due process and equal protection as we understand them thus far to have been expounded by the United States Supreme Court.

Our view that counsel need not withdraw, and that counsel's continued presence in the appeal is appropriate advocacy for the criminal accused, is supported by the American Bar Association Standards on the Defense Function. Standard 4-8.3 provides:

> "Appellate counsel should not seek to withdraw from a case solely on the basis of his or her own determination that the appeal lacks merit."

Standard 21-3.2(b) provides, in part:

> "(i)  Appellate counsel should give a client his or her best professional evaluation of the questions that might be presented on appeal. Counsel, when inquiring into the case, should consider all issues that might affect the validity of the judgment of conviction and sentence, including any that might require initial presentation in a postconviction proceeding. Counsel should advise on the probable outcome of a challenge to the conviction or sentence. Counsel should endeavor to persuade the client to abandon a wholly frivolous appeal or to eliminate contentions lacking in substance.

> "(ii)  If the client chooses to proceed with an appeal against the advice of counsel, counsel should present the case, so long as such advocacy does not involve deception of the court. When counsel cannot continue without misleading the court, counsel may request permission to withdraw."

Under the procedures that we announce today, counsel will not be in danger of "misleading the court." *See also* Hall, Professional Responsibility of the Criminal Lawyer, 512-15, § 17.8 (1987) (discussing *Anders* requirements); Wolfram, Modern Legal Ethics 818 (1986) ("Perhaps a sensible solution is to require appellate lawyers always to file a brief without a motion to withdraw on grounds of frivolousness, even if the lawyer believes that there is no arguable basis for appellate relief, thus avoiding the nice line drawing that *Anders* requires").

The decision of the Court of Appeals is vacated. The case is remanded to the Court of Appeals for further consideration.