**Talmage L. ELLIS, Petitioner–Appellant,**

v.

**Nicholas ARMENAKIS, Respondent–Appellee.**

No. 99–35285.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 1, 2000

Filed Aug. 25, 2000

628

Christopher J. Schatz, Assistant Federal Public Defender, Portland, Oregon, for the petitioner-appellant.

Janet A. Klapstein, Assistant Attorney General, Salem, Oregon, for the respondent-appellee.

Before: LAY,[1] TASHIMA and McKEOWN, Circuit Judges.

LAY, Circuit Judge:

Talmage Ellis appeals the dismissal of his petition for writ of habeas corpus by the United States District Court for the District of Oregon. On July 16, 1990, Ellis was convicted of attempted murder and assault against Larry Hickman. Ellis argues that the evidence at his criminal trial could not support either charge and that his trial counsel's incompetent assistance violated his Sixth Amendment rights. We reject both arguments and affirm the district court's dismissal of Ellis's habeas corpus petition.

## I. Background

### A. The Incident[2]

On the night of July 7, 1990, Ellis, along with co-defendants Darren Clayton and Huey Miller, visited the P.I.T. Club (the Club) in Portland, Oregon. Also at the Club that night were Hickman, and his friends Deborah Anderson and Larnell Bruce. As the evening progressed, the two groups mingled and ended up at adjacent tables. The co-defendants began making disparaging gang comments, apparently aimed at Hickman's group, including: "Fucking slob, we gonna kill us a slob."[3] Shortly after, Ellis attacked Hickman. Clayton and Miller joined in, until a Club bouncer intervened and lead Hickman out through a side door.

Testimony revealed that after Hickman was led out of the Club, the three co-defendants followed. Once outside, all three co-defendants resumed their assault on Hickman. Ellis tripped Hickman and kicked him in the ribs while he lay on the ground. Finally, both Ellis and Miller grabbed Hickman's arms and pinned him against a car as Clayton drew his gun and shot Hickman in the neck.

On the way to the hospital, Hickman lost a good deal of blood and appeared to go into shock. He spent a week in the hospital. At trial, three months later, Hickman testified that his right arm was numb down to the fingers and that the bullet remained lodged in his shoulder because removal could cause further nerve damage.

### B. Trial and Direct Appeal

Following Ellis's conviction for first degree assault and attempted murder, the trial court merged the convictions into a single conviction for first degree assault, rejected Ellis's motion for a new trial, and on October 9, 1990, sentenced Ellis to 115 months in prison. Ellis appealed to the Oregon Court of Appeals, which affirmed the conviction. See State v. Ellis, 109 Or.App. 75, 817 P.2d 773 (1991). The Oregon Supreme Court denied review. See State v. Ellis, 312 Or. 677, 826 P.2d 635 (1992).

### C. Post–Conviction Proceedings

Ellis then commenced post-conviction proceedings in the Marion County Circuit Court, arguing, inter alia, that he was denied effective assistance of counsel at trial.[4] The court rejected Ellis's arguments. Ellis then petitioned the Oregon Court of Appeals; his attorney, Christopher Shine, submitted a brief in line with

---

1. The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

2. As the jury found Ellis guilty of both attempted murder and assault in the first degree, we examine the facts in the light most favorable to the state. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

3. The term slob apparently refers to members of a gang known as the "Bloods." As members of Hickman's party were wearing red clothing, the "official" color of the Bloods, Anderson testified that she understood the comments as an implied threat against their party.

4. In light of our holding that Ellis procedurally defaulted on his ineffective assistance of counsel claims, we need not list the various grounds set forth.

the procedures from *State v. Balfour*, 311 Or. 434, 814 P.2d 1069 (1991) (*en banc*). The Oregon Court of Appeals denied his petition. *See Ellis v. Zenon*, 130 Or.App. 344, 881 P.2d 183 (1994). Ellis did not seek review by the Oregon Supreme Court.

Ellis next filed the present action with the United States District Court for the District of Oregon. The district court rejected Ellis's petition, and he now appeals to this court. Ellis presents two arguments on appeal: (1) the evidence against him at trial was insufficient to sustain his convictions, and (2) although he procedurally defaulted on his ineffective assistance of counsel claims by failing to seek review by the Oregon Supreme Court on post-conviction review, he argues Oregon's *Balfour* briefing process is constitutionally inadequate; thus, Shine's resort to such process provides cause and prejudice to forgive the procedural default. We reject both arguments and affirm the district court's order.

## II. Discussion

*A. Sufficiency of the Evidence*

■ We review a district court's denial of habeas corpus *de novo*. *See Payne v. Borg*, 982 F.2d 335, 338 (9th Cir.1992). When reviewing sufficiency of the evidence challenges, a reviewing court, looking at the evidence in the light most favorable to the state, decides whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S.

307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Ellis challenges the sufficiency of the evidence on two fronts: (1) the evidence was insufficient to establish that Hickman suffered serious physical injury as required by Oregon's assault law, and (2) the evidence was insufficient to establish that he had the *mens rea* for either crime.[5]

■ Although Ellis did not directly commit the first degree assault, under Oregon law, the state can charge an aider and abettor with the underlying crime committed by the principal.[6] *See* Or.Rev. Stat. § 161.155 ("[a] person is criminally liable for the conduct of another person constituting a crime if . . . (2)(b) [the person] [a]ids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime . . . ."). The test for determining aiding and abetting is a generous one: the least degree of concert or collusion in a criminal offense will suffice to prove aiding and abetting. *See State v. Bargas-Perez*, 117 Or.App. 510, 844 P.2d 931, 933 (1992). *Cf. State ex rel. Juvenile Dep't of Marion County v. Arevalo*, 117 Or.App. 505, 844 P.2d 928, 930 (1992) (holding sufficient evidence of aiding and abetting where defendant's only participation was to invite others to join in the sexual abuse of the victim).

*1. Sufficiency of the Evidence that Hickman was "Seriously Injured"*

■ Ellis urges that the evidence is insufficient to show Hickman was seriously injured.[7] To be convicted of assault under

5. As noted *supra*, the trial court merged the two crimes into a single conviction for first degree assault. *See State v. Fickes*, 36 Or. App. 361, 584 P.2d 770, 772 (1978) (holding Oregon merger law relates to the number of possible convictions, rather than the number of sentences). As we affirm on the assault charge, we need not address any arguments against the conviction for attempted murder. *See Benton v. Maryland*, 395 U.S. 784, 791, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) (holding a criminal conviction is moot when no collateral consequences can attach).

6. Although Ellis was convicted as an aider and abettor to first degree assault, for the sake of clarity, we will refer to the crime as an assault.

7. The state first contends that Ellis has not properly preserved this issue for appeal. We offer no opinion on this question, but instead rule against Ellis on the merits. *See Walters v. Maass*, 45 F.3d 1355, 1360 (9th Cir.1995) (holding where claim fails on merits, interests of judicial efficiency better served by addressing claim on merits rather than default).

Oregon law, a person must cause "serious physical injury" to another. Or.Rev.Stat. 163.185(1). Serious physical injury is defined as "physical injury which creates a substantial risk of death or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." Or.Rev.Stat. § 161.015(8). *See State v. Byers,* 95 Or.App. 139, 768 P.2d 414, 415 (1989) (protracted impairment of mouth and teeth justify conviction for assault I); *State v. Wigget,* 75 Or.App. 474, 707 P.2d 101, 106 (1985) (substantial risk of death where victim's blood loss caused her to go into shock on the way to hospital). Whether or not the victim has suffered serious physical injury is a question of fact for the jury. *Byers,* 768 P.2d at 416.

Ellis relies on *State v. Dillon,* 24 Or.App. 695, 546 P.2d 1090 (1976), to argue that Hickman has not suffered a serious physical injury. The *Dillon* court reversed a jury's assault verdict, holding the injury at issue was not "serious physical injury." The victim in *Dillon* was struck by a .22 caliber bullet, which lodged in his forehead. Ellis's reliance on *Dillon* is misplaced, however, as it is distinguishable from the present case. The *Dillon* court rejected the jury's assault conviction after noting the following facts: (1) after the shooting the victim could drive himself to the hospital, (2) at the hospital the victim required only a band aid and a stitch, (3) there was no evidence of serious or protracted disfigurement, (4) at trial, the victim admitted that the bullet did not presently bother him, and (5) the only medical testimony was that the bullet could be hazardous to nerves or arteries in the future. *Id.* at 1092. Hickman's injury was significantly different than that in *Dillon.* A doctor testified that Hickman lost a good deal of blood and appeared to go into shock on the way to the hospital. He spent a week in the hospital, suffered long-term numbness in his arm, and testimony revealed that he faces a good chance of suffering further nerve damage as a result

of the lodged bullet. Given our deference to the jury, we cannot say that the evidence was insufficient to show serious physical injury to Hickman.

### 2. Sufficiency of the Evidence of Ellis's Mens Rea

■ Ellis also argues that the evidence presented at trial was insufficient to show he had the requisite *mens rea* for assault. Under Oregon law, one aids and abets a crime if one acts "[w]ith the *intent* to promote or facilitate the commission of the [underlying] crime." Or.Rev.Stat. § 161.155(2) (emphasis added). Oregon defines intent as a "conscious objective to cause the result or to engage in the conduct so described." Or.Rev.Stat. § 161.085(7).

Ellis argues that the evidence shows, at best, that he fought with Hickman inside the Club and was merely present when Hickman was shot. Ellis relies on *State v. Moriarty,* 87 Or.App. 465, 742 P.2d 704 (1987), to argue that mere presence at the scene of the crime does not establish an intent to aid and abet the crime. The evidence, however, demonstrates much more than Ellis concedes. Specifically, Ellis was overheard threatening to kill some "slobs," which was understood as a threat against Hickman and his party; Ellis was the first to attack Hickman inside the Club, suggesting he had motive to assault Hickman; Ellis and his co-defendants followed Hickman out of the Club; and most importantly, testimony revealed that Ellis helped pin Hickman against a car as Clayton drew his gun. From these facts, a reasonable jury could infer that Ellis intended to aid and abet the assault on Hickman outside the Club. *See id.* at 706–07 (holding that accomplice liability was appropriate where defendant was at the scene of the crime, had motive to kill the victim, had threatened to kill the victim in the past, and helped clean up afterward).

For these reasons, we hold that there was sufficient evidence for a rational trier of fact to find Ellis guilty of the assault.

## B. The Procedural Bar

 The district court rejected Ellis's ineffective assistance of counsel claims under 28 U.S.C. § 2254(b). Under § 2254(b), before a federal court can hear a habeas corpus petition, the petitioner must have exhausted all available remedies in state courts. *See Duncan v. Henry*, 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995). To satisfy § 2254's exhaustion requirement, Ellis "must have fairly presented the substance of his federal claim to the state courts." *Bland v. California Dep't of Corrections*, 20 F.3d 1469, 1473 (9th Cir.1994) (citations omitted). If a prisoner has defaulted a state claim by "violating a state procedural rule which would constitute adequate and independent grounds to bar direct review … he may not raise the claim in federal habeas, absent a showing of cause and prejudice or actual innocence."[8] *Wells v. Maass*, 28 F.3d 1005, 1008 (9th Cir.1994).

On appeal from the Oregon Circuit Court's rejection of his petition for post-conviction relief, Ellis's appointed counsel, Christopher Shine, helped file and prepare an opening brief. Shine noted, however, that the brief was submitted in accordance with the Oregon Supreme Court's decision in *Balfour*.[9] The Oregon Court of Appeals dismissed Ellis's appeal, and Ellis did not seek review by the Oregon Supreme Court. Ellis admits that by not appealing the dismissal of his post-conviction claims, which included his claim for ineffective assistance of trial counsel, he procedurally defaulted. Ellis believes, however, that the constitutionally inadequate rule set out in *Balfour* provides cause and prejudice to overcome his procedural default.

 To reach the question of *Balfour's* constitutionality, Ellis must show that his Sixth Amendment rights were violated by Shine's representation.[10] *See Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (holding federal habeas courts review state convictions only for constitutional error). While the Sixth Amendment provides a right to effective assistance of counsel for all direct appeals the state grants as of right, *see Evitts v. Lucey*, 469 U.S. 387, 393, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985), a criminal defendant has no constitutional right to counsel on discretionary appeals. *See Ross v. Moffitt*, 417 U.S. 600, 612, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974); *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). The Supreme Court, in *Finley*, explicitly rejected the argument that the *Anders* procedure applies to post-conviction appeals. "We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions, and we decline to so hold today. Our cases establish that the right to appointed

---

8. Ellis makes no claim of actual innocence.

9. The procedures outlined in *State v. Balfour*, 311 Or. 434, 814 P.2d 1069 (1991) (*en banc* ), were in response to the Supreme Court decision in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). In *Anders*, the Supreme Court placed limitations on an indigent criminal defendant attorney's ability to withdraw from an appeal the attorney decides is not likely to succeed. Under the *Anders* procedure, an indigent criminal defendant's attorney can withdraw from a case he feels is meritless only after filing "a brief referring to anything in the record that might arguably support the appeal." *Id.* at 744, 87 S.Ct. 1396. Under the *Balfour* procedures, an attorney does not withdraw from the representation; instead, he prepares a statement of the case sufficient to inform the court of the jurisdictional basis of the appeal, and then the criminal defendant must independently argue the allegedly frivolous substantive claims in another portion of the brief. *See Balfour*, 814 P.2d at 1080. The attorney must also provide his client with "appropriate legal advice" on the claims and ensure that the client "states the issues and arguments in proper appellate brief form." *Id.*

10. Recently, the Supreme Court decided *Smith v. Robbins*, 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000), which provides significant insight into the holding of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). As we do not reach the *Balfour* issue, we need not discuss the holding of *Robbins*.

counsel extends to the first appeal of right, and no further." *See Finley*, 481 U.S. at 555, 107 S.Ct. 1990 (citations omitted). Thus, even if the *Balfour* process is unconstitutional with respect to direct appeals, Ellis cannot show cause and prejudice because he had no constitutional right to Shine's services on post-conviction review.

■ Under Oregon law, however, a prisoner cannot challenge the competence of his trial counsel on direct review; such an attack must wait for collateral proceedings. *See State v. Sweet*, 30 Or.App. 45, 566 P.2d 199, 200 (1977). Ellis argues that because collateral proceedings were his first opportunity to challenge the competence of his trial attorney, we should treat those proceedings as an appeal of right in which he has a constitutional right to adequate counsel.

This circuit rejected this argument in *Bonin v. Vasquez*, 999 F.2d 425, 429 (9th Cir.1993). In *Bonin*, we held that there was no constitutional right to counsel during state habeas proceedings even if that was the first forum in which a defendant could challenge the constitutional competence of counsel. *Cf. Jeffers v. Lewis*, 68 F.3d 299, 300 (9th Cir.1995) (*en banc*) (although only a plurality of justices (four of eleven) joined in that part of the opinion holding that *Bonin* controlled the case, the remaining members of the majority relied on another ground and did not comment on *Bonin*). As *Bonin* is still the law in this circuit, it controls our decision. *See Moran v. McDaniel*, 80 F.3d 1261, 1271 (9th Cir.1996) (applying *Bonin* to hold no Sixth Amendment right to counsel in federal habeas action despite contention that federal forum was the first forum to challenge the effectiveness of trial counsel).

■ Even if we were to accept that Ellis had a constitutional right to counsel on post-conviction review, it is difficult to comprehend petitioner's argument that the *Balfour* process caused the procedural default. Any deficiencies of *Balfour* have nothing to do with Ellis's decision not to appeal to the Oregon Supreme Court. Had Shine complied with *Anders*, he would have written a brief informing the appellate court of all arguably meritorious issues. There is no connection between the preparation of such brief (or lack thereof) and the failure to appeal to the Oregon Supreme Court. While Ellis theoretically could argue that Shine's non-compliance with *Anders* infringed his right to adequate review at the appellate court level, he cannot show how Shine's failure to comply with *Anders* lead to the failure to even file an appeal.

For the above reasons, Ellis's procedural default cannot be forgiven by the allegedly constitutionally deficient procedures laid out in *Balfour*.

### III. Conclusion

We hold there was sufficient evidence to support Ellis's conviction, and that Ellis is procedurally barred from raising his ineffective assistance of trial counsel claim before this court. The district court order is AFFIRMED.