Argued and submitted June 4, 2008, certified question answered March 26, 2009

GEORGE EDWARD FARMER,
*Petitioner,*

*v.*

George H. BALDWIN,
Superintendent,
Eastern Oregon Correctional Institution,
*Respondent.*

(USDC CV 02-1565-ALA; USCA 06-35635; SC S055187)

205 P3d 871

Lisa Hay, Assistant Federal Public Defender, Portland, argued the cause and filed the brief for petitioner.

Mary Williams, Solicitor General, Salem, argued the cause and filed the brief for respondent. With her on the brief was Hardy Myers, Attorney General.

DURHAM, J.

## DURHAM, J.

This case is before this court on a certified question of Oregon law from the United States Court of Appeals for the Ninth Circuit. *Farmer v. Baldwin*, 497 F3d 1050 (9th Cir 2007). Under federal law, a petitioner generally may not obtain a writ of habeas corpus without first exhausting the remedies available to him in state court. 28 USC § 2254(b)(1)(A).[1] To exhaust those remedies, the petitioner "must fairly present his claims in each appropriate state court," in a manner that would "[alert] that court to the federal nature of the claim." *Farmer*, 497 F3d at 1053 (internal quotation marks omitted). The Ninth Circuit asks this court to determine whether, on the facts of this case, petitioner properly raised his federal claims in this court prior to seeking federal habeas relief.

## I.   FACTS AND PROCEDURAL HISTORY

The facts of this case are not in dispute. A jury convicted petitioner George Edward Farmer of murder, and the trial court imposed a sentence of 25 years to life imprisonment. Following an unsuccessful appeal, *State v. Farmer*, 116 Or App 673, 842 P2d 465 (1992), *rev'd*, 317 Or 220, 856 P2d 623 (1993), petitioner sought post-conviction relief (PCR). Petitioner raised nearly 100 challenges to his conviction, the bulk of which were based on both the state and federal constitutions. The PCR court denied relief.

Petitioner appealed his post-conviction case, but his appellate attorney apparently could not identify any meritorious issues on appeal. Accordingly, the attorney submitted a brief in accordance with the procedures that this court

---

[1] 28 USC § 2254 provides, in part:

"(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

"(A) the applicant has exhausted the remedies available in the courts of the State[.]

"* * * * *

"(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

announced in *State v. Balfour*, 311 Or 434, 814 P2d 1069 (1991), and codified at Oregon Rule of Appellate Procedure (ORAP) 5.90,[2] which we set out below. The attorney prepared section A, which identified the brief as a *Balfour* brief, and stated:

> "Counsel has complied with the provisions of *Balfour* by contacting petitioner and post-conviction trial counsel for petitioner, in an effort to identify any nonfrivolous issues for appeal. Petitioner has been offered an opportunity to draft and submit a Section B brief with the assistance of counsel.

> "Petitioner has decided to attach a copy of his post conviction petition, in the hopes of at least preserving all the issues presented therein."

The brief contained no section identified as "section B," but petitioner did attach a copy of his post-conviction petition. The Court of Appeals affirmed the decision of the PCR court without opinion. *Farmer v. Baldwin*, 182 Or App 292, 49 P3d 851 (2002).

Petitioner sought review in this court. The petition for review did not identify a section A or section B. Instead, under the heading "Statement of Facts," the petition stated that "[p]etitioner has filed a Petition for Post-Conviction Relief and makes all the allegations set forth therein." Under the heading "Statement of reasons why issue requires Supreme Court decision," the petition stated that "[t]he petitioner's position is also set forth in the appellant's [*B*]*alfour* brief." Otherwise, the petition did not identify any legal questions presented on review. Petitioner did not attach a copy of his appellate brief or his post-conviction petition to the petition for review. This court denied review of petitioner's case. *Farmer v. Baldwin*, 334 Or 631, 54 P3d 1041 (2002).

---

[2] *Balfour* addressed the requirements of both legal ethical principles and the Sixth Amendment to the United States Constitution when an appellate attorney, appointed to represent an indigent criminal defendant, is unable to identify any meritorious issues for a direct appeal. In such a case, this court held, the attorney may submit an appellate brief in two sections. Section A contains a statement of the case without any assignments of error or argument and is signed by the attorney. Section B presents "the issue that the client seeks to raise in the manner that the client seeks to raise it" and is signed by the defendant. *Balfour*, 311 Or at 451-52. ORAP 5.90(1)(a) and (b) state the requirements for sections A and B of a brief filed under that rule.

Petitioner then filed for a writ of habeas corpus in federal court. The federal district court found that petitioner had not exhausted his state remedies prior to filing for habeas relief because he had failed to fairly present his federal claims to this court:

> "[T]he petition for review submitted to the Oregon Supreme Court did not identify a federal claim or allege a violation of federal constitutional law. Consequently, to be apprised of petitioner's federal claims, the Oregon Supreme Court would have had to 'read beyond' the petition for review and the appellate briefing to discover petitioner's alleged federal claims. Specifically, the Oregon Supreme Court would have had to review petitioner's *Balfour* brief presented to the Oregon Court of Appeals and peruse the attached, fifteen-page amended PCR petition alleging almost 100 grounds for relief."

*Farmer v. Baldwin*, Civ No 02-1565-AA, 2006 WL 1766184 at *3 (D Or June 22, 2006). Accordingly, the district court dismissed the petition.

Petitioner appealed to the Ninth Circuit, arguing that he had fairly presented his federal claims to this court. To determine whether that was the case, the Ninth Circuit examined the 2001 Oregon Rules of Appellate Procedure.[3] The court found that the petition for review had failed to fairly present petitioner's claims under ORAP 9.05. However, the court held that the petition actually was governed by the *Balfour* standard for pleading set forth at ORAP 5.90. The court then noted that it was "simply unaware of the extent to which the Oregon Supreme Court may be flexible in applying that rule," particularly when presented with a petition for review that referred to a *Balfour* brief that was filed in the Court of Appeals. *Farmer*, 497 F3d at 1054. Accordingly, the Ninth Circuit certified the following question to this court:

> "Whether, under its rules or practice, the Oregon Supreme Court would deem a federal question not properly raised

---

[3] Although the 2001 Oregon Rules of Appellate Procedure govern this case, *see* ORAP 1.10(2) ("The superseded [Oregon Rules of Appellate Procedure] shall apply to any thing filed or time period commenced in the appellate courts before the effective date of any amendment or new rule."), we refer in this opinion to the current Oregon Rules of Appellate Procedure. As regards this case, we perceive no material difference between the 2001 version and the current rules.

before it, when that question has been presented by means of an attachment to a *Balfour* brief filed in the Court of Appeals, and the attachment served as (but was not labeled as) Section B of said brief, and the petitioner specifically states in his petition to the Supreme Court that his reasons for seeking review are set forth in the *Balfour* brief."

*Id.* at 1055-56. This court accepted the certified question.

## II.  APPLICATION OF APPELLATE PROCEDURAL RULES

Before we answer that question, there is a point that we must clarify about our answer. As we understand it, the Ninth Circuit does not ask us to determine whether the petitioner in the instant case has fairly presented his claims to this court. Fair presentation is a question of federal law. Rather, we assume that the Ninth Circuit asks us to determine whether petitioner presented his claims in a manner that would have allowed us to exercise our discretion to review them. We will answer that question by reference to Oregon appellate procedure. In the latter part of this opinion, we present other information that may assist the Ninth Circuit in determining, in light of our answer, whether petitioner has satisfied the federal fair presentation requirement.

■  First, we address some general arguments that the state makes regarding appellate procedure. The state asserts that this court will not "scour the petitioner's Court of Appeals briefs as part of its consideration of the petition for review." Instead, the state insists that this court will consider briefs filed in the Court of Appeals "only after the petition has been granted."

■  When this court considers a petition for review of a decision of the Court of Appeals, briefs filed in the Court of Appeals are available to this court and will be reviewed at that stage if the court or any justice desires to do so. Nothing requires the court or any justice to consider only the petition for review in deciding whether to grant review. The Oregon Rules of Appellate Procedure make that clear. ORAP 9.07(15) states that one of this court's criteria for granting review is "[w]hether the issues are well presented in the briefs." The term "briefs" necessarily refers to the briefs filed in the Court

of Appeals, because the rules do not give leave to the parties to file briefs in the Supreme Court until *after* this court grants review. *See* ORAP 9.17(1) (so stating).[4] Likewise, ORAP 9.10(1) provides that, in the absence of a response to the petition for review, "the party's brief in the Court of Appeals will be considered as the response." Finally, ORAP 9.05(4)(d) states that the petition for review shall contain "[i]f desired, and space permitting, a brief argument concerning the legal question or questions presented on review." At the same time, one of this court's criteria for granting review is "[w]hether the Court of Appeals decision appears to be wrong." ORAP 9.07(14). It is doubtful that a party could demonstrate that a decision of the Court of Appeals was in error *without* reference to a legal argument. If a legal argument is not required in the petition for review—and the rules clearly state that a party need only include such an argument "[i]f desired"—it follows that this court may consider briefs filed in the Court of Appeals to identify and evaluate a party's legal arguments on a question presented on review. The appellate brief filed in the Court of Appeals can be the most likely source for those arguments.[5]

■    The state also asserts that a petition for review may not incorporate appellate briefs by reference. No provision of the Oregon Rules of Appellate Procedure expressly restricts the use of that drafting technique in preparing a petition for review. It is generally true that our rules discourage undue repetition in briefing a party's arguments. Incorporating arguments by means of a reference to briefs filed at an earlier stage of proceedings can foster that goal. ORAP 9.05(4)(d) illustrates that point. As stated above, that rule requires a

---

[4] ORAP 9.17 provides, in part:

"(1) After the Supreme Court allows review, the parties to the case on review may file briefs on the merits of the case, as provided in this rule. A respondent may file a brief on the merits on review even if the petitioner on review elects not to do so."

[5] The Ninth Circuit has observed that this court "often looks to the briefs filed in the Court of Appeals in deciding whether to grant petitions for review * * *." *Wells v. Maass*, 28 F3d 1005, 1009 (9th Cir 1994); *accord Peterson v. Lampert*, 319 F3d 1153, 1157 (9th Cir 2003) (describing *Wells* as holding that "the federal claim had been fairly presented when the claim had been briefed in the court of appeals and where it was clear 'in context' that the petition for review referred to the appellate brief"). We agree with those observations.

petition for review to contain a brief argument related to each reason asserted for review, "[i]f desired." ORAP 9.05(4)(d) thus implies that a petitioner may rely on the legal arguments made in the Court of Appeals. The best way for a petitioner to do so is to direct this court's attention to those arguments by referring to them within the petition. At a minimum, the rules contemplate that a petitioner may raise arguments by incorporating those arguments from his or her appellate brief into the petition for review.

The question posed by the Ninth Circuit, however, is more specific. The Ninth Circuit asks whether a petitioner may present a "federal question" by stating that question in an attachment to a *Balfour* brief and then incorporating that brief by reference into a petition for review. Petitioner argues that such incorporation by reference is permissible under the standard for *Balfour* briefs announced at ORAP 5.90. The state responds, first, by pointing out that, under ORAP 9.05(4)(b), the petition for review must contain a statement of the legal question presented on review. The state asserts that, under that rule, the petitioner must present the legal question within the petition itself. Second, the state asserts that, even under ORAP 5.90, a *Balfour* litigant has a "core obligation" to identify the legal question within the bounds of the petition for review.[6]

Because the parties rely on ORAP 9.05 and ORAP 5.90 to support their arguments, we quote those rules below. First, ORAP 9.05 describes the procedural requirements regarding the contents for a petition for review. That rule provides, in part:

"(2)   Time for Filing and for Submitting Petition for Review

---

[6] The state also asserts that petitioner did not file the petition for review under ORAP 5.90(5), because petitioner's counsel prepared and signed the petition for review, and petitioner did not sign the petition for review. We have assumed to the contrary, because counsel's role in preparing and signing a petition for review does not dictate the applicable appellate procedure and because the petition for review expressly referred to "appellant's [B]alfour brief." The parties focus their arguments on the permissibility of incorporating issues into a petition for review by reference to a previously filed *Balfour* brief, not on whether ORAP 5.90(4) and (5) or ORAP 9.05 governed the petition for review that petitioner filed.

"(a)   Any party seeking to obtain review of a decision of the Court of Appeals shall file a petition for review in the Supreme Court within 35 days after the date of the decision of the Court of Appeals.

"\* \* \* \* \*

"(3)   Form and Service of Petition for Review

"(a)   The petition shall be in the form of a brief, prepared in conformity with Rules 5.05, except that the petition shall not exceed 15 pages in length, and ORAP 5.35. The cover of the petition shall:

"(i)   Identify which party is the petitioner on review, including the name of the specific party or parties on whose behalf the petition is filed, if there are multiple parties on the same side in the case.

"(ii)   Identify which party is the respondent on review.

"(iii) Identify the date of the decision of the Court of Appeals.

"(iv)   Identify the means of disposition of the case by the Court of Appeals;

"\* \* \* \* \*

"(4)  Contents of Petition for Review

"The petition shall contain in order:

"(a)   A short statement of the historical and procedural facts relevant to the review, but facts correctly stated in the decision of the Court of Appeals should not be restated.

"(b)   Concise statements of the legal question or questions presented on review and of the rule of law that petitioner on review proposes be established, if review is allowed.

"(c)   A statement of specific reasons why the legal question or questions presented on review have importance beyond the particular case and require decision by the Supreme Court.

"(d)   If desired, and space permitting, a brief argument concerning the legal question or questions presented on review.

"(e)   A copy of the decision of the Court of Appeals, including the court's opinion and any concurring and dissenting opinions."

ORAP 5.90 states procedural requirements for a petition for review in the *Balfour* context, *i.e.*, when court-appointed counsel for an indigent defendant in a criminal case determines that the case does not raise any arguably meritorious issues on appeal:

"(1)   If counsel appointed by the court to represent an indigent defendant in a criminal case on direct appeal has thoroughly reviewed the record, has discussed the case with trial counsel and the client, and has determined that the case does not raise any arguably meritorious issues, counsel shall file an opening brief with two sections:

"(a)   Section A of the brief shall contain:

"(i)   A statement of the case, including a statement of the facts of the case. If the brief contains a Section B with one or more claims of error asserted by the client, the statement of facts shall include facts sufficient to put the claim or claims of error in context.

"(ii)   A description of any demurrer or significant motion filed in the case, including, but not limited to, a motion to dismiss, a motion to suppress and a motion *in limine*, and the trial court's disposition of the demurrer or motion.

"(iii)   A statement that the case is being submitted pursuant to this rule, that counsel has thoroughly reviewed the record and discussed the case with trial counsel and the client, and that counsel has not identified any arguably meritorious issue on appeal. If the brief does not contain a Section B, counsel also shall state that counsel contacted the client, gave the client reasonable opportunity to identify a claim or claims of error, and that the client did not identify any claim of error for inclusion in the brief.

"(iv)   Counsel's signature.

"(b) (i)   Section B of the brief is the client's product and may contain any claim of error that the client wishes to assert. The client shall attempt to state the claim and any argument in support of the claim as nearly as practicable in proper appellate brief form. Section B of the brief shall not

exceed 48 pages in length. The last page of Section B of the brief shall contain the name and signature of the client.[7]

"(ii) Counsel's obligation with respect to Section B of the brief shall be limited to correcting obvious typographical errors, preparing copies of the brief, serving the appropriate parties, and filing the original brief and the appropriate number of copies with the court.

"* * * * *

"(4) In a case other than a criminal case on direct appeal, court-appointed counsel who determines that there are no meritorious issues on appeal may submit a brief under this rule * * *.

"(5) In any case in which the appellant is represented by court-appointed counsel on appeal and counsel filed a brief in the Court of Appeals under subsection (1) of this rule, counsel may submit a petition for review that contains a Section A that complies with Rule 9.05(3)(a), and a Section B that complies with paragraph (1)(b) of this rule."

It is true that ORAP 9.05(4)(b) requires a petition for review to contain "[c]oncise statements of the legal question or questions presented on review." It also is true, however, that ORAP 5.90(5) specifically exempts a *Balfour* petition from that requirement. The only part of ORAP 9.05 that a *Balfour* petition must comply with is ORAP 9.05(3)(a), which principally describes the requirements for the cover of a petition for review.

Otherwise, section B of a petition for review filed under ORAP 5.90(5) and *Balfour*—the part that raises a client's claims of error—must comply with ORAP 5.90(1)(b)(i), which requires, on the petitioner's part, an "attempt to state the claim and any argument in support of the claim as nearly as practicable in proper appellate brief form." The qualifiers "attempt" and "as nearly as practicable" are key terms. ORAP 5.90 does not require exact compliance with the forms

---

[7] ORAP 5.90(1)(b) (2001) imposed no page limitation on section B of the brief. That rule provided:

"Section B of the brief shall contain any claim of error requested by the client and shall be signed by the client. Section B shall attempt to state the claim and any argument in support of the claim as nearly as practicable in the manner that the client seeks, in proper appellate form."

and rules of appellate briefing that lawyers observe; rather,it requires that a litigant attempt to present his or her claims in proper appellate brief form, as nearly as practicable.

Given the relaxed standard that ORAP 5.90 imposes, we cannot say that a petitioner fails to comply with that rule by presenting a legal question in an attachment to a *Balfour* brief, as long as the attachment serves as the section B of the petitioner's brief in the Court of Appeals and the petition for review incorporates that attachment. ORAP 5.90 requires only an "attempt" to comply with proper appellate brief form. In light of the lack of legal training that most *Balfour* litigants possess, we cannot say that, on its face, a petition such as that described above fails to qualify as an attempt to state the claim within the meaning of ORAP 5.90.

We also note that an assumption underlies the arguments of both petitioner and the state that we believe to be erroneous. Both parties appear to assume that this court may not consider a legal question for review if that question is not presented in a petition that complies explicitly with the requirements of either ORAP 5.90(5) or ORAP 9.05. That is not necessarily true. As ORAP 9.07 states, this court "retains the inherent authority to allow or deny any petition for review."[8] That authority is not limited by a party's failure to comply with the required forms of appellate briefing. ORAP 1.20 provides that this court and the Court of Appeals "may" respond to a failure to comply with appellate rules by striking briefs and motions, or by dismissing an appeal,[9] but that

---

[8] ORAP 9.07 lists the criteria that this court will consider when granting discretionary review and provides, in part:

"The Supreme Court considers the items set out below to be relevant to the decision whether to grant discretionary review. These criteria are published to inform and assist the bar and the public. They are neither exclusive nor binding. *The court retains the inherent authority to allow or deny any petition for review.*"

(Emphasis added.)

[9] ORAP 1.20 provides, in part:

"(2) The court on its own motion or on motion of a party may strike, with or without leave to refile, any brief, excerpt of record, motion or other thing that does not conform to applicable statutes or these rules.

"* * * * *

"(4) The court on its own motion or on motion of a party may dismiss an appeal for want of prosecution if:

authority, as demonstrated by the word "may," is discretionary. Nothing in the Oregon Rules of Appellate Procedure *prevents* this court from considering an imperfectly drafted petition as a candidate for review.

We do not take lightly a party's failure to comply with the Oregon Rules of Appellate Procedure. The appellate courts have promulgated those rules to facilitate the expeditious disposition of their business.[10] We are not inclined to expend limited judicial resources on behalf of litigants who demonstrate a lack of regard for appellate court rules. But, as our rules demonstrate, a litigant may fail to comply with the rules and still "present" a claim to this court, because this court retains authority to review imperfectly presented claims.

The ultimate question whether a litigant has raised a claim for review by this court is a matter committed to this court's discretion. Ordinarily, a litigant must explain how the lower courts have erred and why this court should exercise its discretion to correct the error. That is a low threshold. To raise a claim for review, a litigant need not be persuasive, correct, thorough, or even reasonable. All a litigant has to do is to identify to this court the claim of error that he or she wants to see corrected. This court may decide, in response, whether to allow or deny review of the alleged error.

---

"(a) the appellant has failed to comply with applicable statutes or these rules;

"(b) fourteen days' notice of the noncompliance has been given to each attorney of record and to parties not represented by counsel; and

"(c) the court has not received a satisfactory response to the notice.

"(5) For good cause, the court on its own motion or motion of any party may waive any rule."

[10] ORS 2.120 provides:

"The Supreme Court shall have power to make and enforce all rules necessary for the prompt and orderly dispatch of the business of the court, and the remanding of causes to the court below."

ORS 2.560 provides, in part:

"(2) The Court of Appeals may make and enforce all rules necessary for the prompt and orderly dispatch of the business of the court, and the remanding of causes to the lower courts, and not inconsistent with applicable rules made or orders issued by the Chief Justice of the Supreme Court or the Chief Judge of the Court of Appeals."

■  With that said, we turn to the petition filed in the instant case. Petitioner presented his claims to this court by attaching a post-conviction petition as section B of his *Balfour* brief and then cross-referencing that brief in his petition for review. As we mentioned earlier, under ORAP 5.90, that is acceptable as an "attempt" to comply with proper appellate brief form "as nearly as practicable." In other words, the petition for review complied with the appellate rules, at least minimally.

That leaves the question of whether, as a practical matter, the petition presents a cognizable claim for review. As we stated earlier, the briefs filed in the Court of Appeals are properly before us as part of our evaluation of a petition for review. This court's rules allow the petitioner to direct our attention to those briefs to determine the question or questions presented on review. Accordingly, petitioner's incorporation by reference of arguments from his appellate brief is a permissible method of raising an issue in this court.

We are more concerned by the form of petitioner's section B of his Court of Appeals brief, incorporated by reference in his petition for review. As we mentioned earlier, an appellant's duty is to identify how a lower court has erred. Instead of explaining how the trial court or the Court of Appeals erred, however, petitioner submitted his post-conviction petition as his section B. That petition sought relief from conviction in the trial court; it did not identify any errors arguably committed in this proceeding by either the trial court or by the Court of Appeals. That said, however, when reading a petition filed by a *Balfour* litigant, we will attempt to give that petition a fair reading, rather than dismissing it out of hand. In the instant case, we assume that, by filing his post-conviction petition as section B of his *Balfour* brief, petitioner intended to argue that his conviction was flawed on the grounds asserted therein and that the PCR court had erred in denying *all* his claims for relief. We take that as the claim that petitioner intended to present to this court.

We conclude from the foregoing that the petition for review in the instant case fell within the bounds of permissible appellate advocacy, as stated in our rules. However, we

stress that the petition does not present an example of *effective* appellate advocacy. The petition lacked a presentation of careful, thorough arguments explaining why this court should review those issues. Petitioner simply restated, on appeal and on review, every claim that he had raised at trial without presenting even a cursory explanation of why the trial court or the Court of Appeals should have ruled in his favor. Only in the rarest circumstance would this court be inclined to exercise its discretion to grant such an under-developed petition for review. The Oregon Rules of Appellate Procedure permit petitioner to seek review of his case in that manner, but we do not advise future litigants to follow in his footsteps.

We therefore answer the Ninth Circuit's question as follows. Under ORAP 5.90, a petitioner may present a question of law to this court by means of an attachment to a *Balfour* brief filed in the Court of Appeals, when the attachment serves as section B of said brief, and the petitioner incorporates that same brief by reference into his petition for review. We do not recommend that petitioners present their questions in that manner, but we will not refuse outright to consider their questions if they do so.[11]

### III.   PETITIONER'S CLAIM THAT REVIEW IS "UNAVAILABLE"

The foregoing answer ordinarily would end the matter, but petitioner raises an additional issue in this proceeding. This court has discretion to reframe certified questions, although it ordinarily exercises that discretion with reserve, to facilitate a resolution to the actual question of law presented by the case in point. *Western Helicopter Services v. Rogerson Aircraft*, 311 Or 361, 370-71, 811 P2d 627 (1991). Petitioner requests that this court exercise its discretion and reframe the certified question to clarify that, "under existing law, review in this Court is an extraordinary remedy not 'available' for all classes of cases." Specifically, petitioner

---

[11] The Oregon Rules of Appellate Procedure place limits on the size of a section B. ORAP 5.90(1)(b) now restricts the length of a section B of a *Balfour* brief to 48 pages. If a section B attachment causes a petition for review filed under ORAP 5.90(5) to exceed that length, this court retains discretionary authority to address the violation of that rule through a variety of sanctions. ORAP 1.20.

requests that this court declare that a prisoner who seeks federal habeas corpus relief need not petition this court for review of his claims to exhaust available state remedies. For the following reasons, we decline to reformulate the certified question in that manner.

A discussion of federal law is necessary to understand the legal issues that attend petitioner's request. As mentioned above, a federal habeas corpus petitioner must exhaust available state post-conviction remedies before filing in federal court. 28 USC § 2254(c) provides that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State * * * if he has the right under the law of the State to raise, by any available procedure, the question presented." The United States Supreme Court has held that 28 USC § 2254(c) requires a state prisoner to "invok[e] one complete round of the State's established appellate review process" before seeking federal habeas relief. *O'Sullivan v. Boerckel*, 526 US 838, 845, 119 S Ct 1728, 144 L Ed 2d 1 (1999). However, prisoners are not required to seek "extraordinary remedies" that "are alternatives to the standard review process and where the state courts have not provided relief through those remedies in the past." *Id.* at 844. Such remedies are not considered "available" under 28 USC § 2254(c). *Id.*

In *O'Sullivan*, the Supreme Court held that 28 USC § 2254(c) required an Illinois prisoner to seek review of his post-conviction claims in the Illinois Supreme Court, a court of discretionary review. The Court acknowledged that a prisoner has no right to receive review from a court that holds discretionary control over its docket. However, the Court held, the prisoner had the right to *present* his claims to the Illinois Supreme Court, and that court had the opportunity to review them. As such, review in that court was "available." *Id.* at 845. That was true, the Court held, even though the Illinois Supreme Court's rules of procedure suggested that that court preferred to avoid review of "routine allegations of error" and, instead, "to expend its limited resources on

questions of broad significance." *Id.* at 846 (internal quotation marks omitted).[12]

The Supreme Court acknowledged that, as a possible consequence of its holding, state supreme courts could be flooded with unwanted post-conviction petitions:

> "We also recognize that this increased burden may be unwelcome in some state courts because the courts do not wish to have the opportunity to review constitutional claims before those claims are presented to a federal habeas court. *See, e.g., In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 321 S.C. 563, 471 S.E. 2d 454 (1990); *see also State v. Sandon*, 161 Ariz. 157, 777 P. 2d 220 (1989)."

The Court then suggested that there was a limit on its holding:

> "In this regard, we note that nothing in our decision today requires the exhaustion of any specific state remedy when a State has provided that that remedy is unavailable. Section 2254(c), in fact, directs federal courts to consider whether a habeas petitioner has 'the right *under the law of the State to raise, by any available procedure,* the question presented.' (Emphasis added.) The exhaustion doctrine, in other words, turns on an inquiry into what procedures are 'available' under state law. In sum, there is nothing in the exhaustion doctrine requiring federal courts to ignore a state law or rule providing that a given procedure is not available. We hold today only that the creation of a discretionary review system does not, without more, make review in the Illinois Supreme Court unavailable."

*Id.* at 847-48 (emphasis in original).

---

[12] Illinois Supreme Court Rule 315(a), as quoted in *O'Sullivan*, provides:

"The following, while neither controlling nor fully measuring the court's discretion, indicate the character of reasons which will be considered: the general importance of the question presented; the existence of a conflict between the decision sought to be reviewed and a decision of the Supreme Court, or of another division of the Appellate Court; the need for the exercise of the Supreme Court's supervisory authority; and the final or interlocutory character of the judgment sought to be reviewed."

526 US at 843.

The import of that last paragraph is less than clear. The Supreme Court said that the exhaustion doctrine does not require a state prisoner to avail himself of a given state procedure if "a state law or rule" provides that the procedure in question "is not available." The Court then added that endowing a court with powers of discretionary review does not make such review unavailable, "without more." The majority opinion set up a question and then declined to answer it: Exactly what "more" is needed if a state wishes to make review in a court of last resort "unavailable" for exhaustion purposes?

Two state court cases, decided prior to *O'Sullivan* and cited by the Supreme Court in that case, may suggest an answer. In *State v. Sandon*, 161 Ariz 157, 777 P2d 220 (1989), an Arizona prisoner had sought federal habeas relief, and the federal district court had dismissed his petition, holding that he had not exhausted his state remedies because he had failed to present several issues to the Arizona Supreme Court. The prisoner then sought review of those issues in the Arizona Supreme Court.

In an earlier case, the Arizona Supreme Court had held that an attorney in a criminal case was not required to file a petition for review if the attorney determined that no issue was appropriate for review—a situation identical to that faced by attorneys filing *Balfour* briefs. *State v. Shattuck*, 140 Ariz 582, 684 P2d 154 (1984). The court set out two primary reasons for reaching that decision. First, the court noted, there was no *right* to supreme court review except in criminal cases involving a life sentence or the death penalty. "In all other cases, review is discretionary with this court." *Id.* at 156. Second, the court noted that its resources were limited and, as a court of discretionary review, it would not choose to focus those resources on "trivia":

> "The system is strained to the point that we cannot afford the luxury of repeated review of trivia or issues of small merit. The time available to prosecutors, defenders, judicial staff and judges must be devoted to issues of substance."

*Id.* at 157.

*Sandon* examined the holding of *Shattuck* and concluded that, given the considerations discussed in *Shattuck*, Arizona prisoners were not required to petition the state supreme court to exhaust state remedies:

> "In [*Shattuck*], we pointed out that there was no right to appeal to this Court except in cases in which the death penalty or life imprisonment is imposed. While *Shattuck* involved a discussion of the role of counsel in cases appealed according to *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), the considerations are the same when discretionary review is sought in this Court pursuant to Rule 31.19. Once the defendant has been given the appeal to which he has a right, state remedies have been exhausted. Not only is this court not required to accept petitions for review in *Anders* type cases, we are not *required* to accept them in any case."

*Sandon*, 777 P2d at 221 (internal quotation marks and citations omitted; emphasis in original). Accordingly, the Arizona Supreme Court held that the prisoner had exhausted his state remedies and dismissed the petition.

The South Carolina Supreme Court reached a similar conclusion in *In re Exhaustion of State Remedies*, although it did so without responding to the petition of a particular litigant. Instead, the court issued the following order of its own accord:

> "In 1979, the General Assembly created the South Carolina Court of Appeals for the purpose of reducing South Carolina's appellate backlog. The Court of Appeals reviews criminal as well as civil appeals, and this Court reviews its decisions by writ of certiorari only where special reasons justify the exercise of that power.

> "We recognize that criminal and post-conviction relief litigants have routinely petitioned this Court for writ of certiorari upon the Court of Appeals' denial of relief in order to exhaust all available state remedies. We therefore declare that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error. Rather, when the claim has been presented

to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies."

*In re Exhaustion of State Remedies*, 471 SE 2d at 454.

Common threads appear in *Sandon* and *In re Exhaustion of State Remedies*. In each opinion, a state supreme court asserted its prerogative, as a court of discretionary review, to limit the exercise of its discretion to cases that present "issues of substance" or "special reasons" to accept review. In each opinion, the court noted that post-conviction relief litigants petition it "routinely" and in "large numbers." And in each opinion, the court rectified that situation by announcing that state prisoners were not required to seek its review to exhaust state remedies. That much is clear.

What is not clear is *why* the United States Supreme Court cited both those opinions in *O'Sullivan*. We can think of two possible conclusions that a lower court could draw from those citations. First, the Court may have cited *In re Exhaustion of State Remedies* and *Sandon* to show that, although some state supreme courts consider an increase in petitions for post-conviction relief to be what *O'Sullivan* describes as an "unwelcome burden" that "disserves the comity interests underlying the exhaustion doctrine," that burden, nevertheless, is one that those courts must bear. We note that, in *In re Exhaustion of State Remedies* and *Sandon*, the supreme courts of South Carolina and Arizona relied on their status as courts of discretionary review to hold that prisoners were not required to petition them to exhaust state remedies. But *O'Sullivan* states that the creation of a system of discretionary review does not, "without more," make state supreme court review unavailable. Accordingly, that passage from *O'Sullivan* can be read as an implicit rejection of *In re Exhaustion of State Remedies* and *Sandon*.

It also may be that the Supreme Court cited those cases as *examples* of how a state supreme court might avoid an unwelcome influx of post-conviction petitions, by announcing that discretionary review is "unavailable" for exhaustion purposes. The creation of a discretionary review system, "without more," does not make review unavailable. The Court's citation to *In re Exhaustion of State Remedies*

and *Sandon*, however, permits the inference that the something "more" that it requires is an announcement from a state supreme court "that a given procedure is not available." We note that, in *O'Sullivan*, the Illinois Supreme Court had made no such announcement.

In a concurrence to *O'Sullivan*, Justice Souter—himself a former member of a state's highest court—gave the latter reading to the majority opinion. Justice Souter opined that the Court's citation to *In re Exhaustion of State Remedies* "should not be read to suggest * * * that however plainly a State may speak its highest court must be subjected to constant applications for a form of discretionary review that the State wishes to reserve for truly extraordinary cases * * *." *O'Sullivan*, 526 US at 849-50 (Souter, J., concurring). Instead, Justice Souter understood that the Court would allow state prisoners to "skip" procedures "even when a state court has occasionally employed it to provide relief," as long as the state "has identified the procedure as outside the standard review process" and "has plainly said that it need not be sought for the purpose of exhaustion." *Id.* at 850.

Most federal circuits that have considered that question have given *O'Sullivan* the same reading that Justice Souter did. The interactions between the Arizona Supreme Court and the Ninth Circuit provide an example. Prior to *O'Sullivan*, the Ninth Circuit had rejected the previously discussed holding in *Sandon* and held that Arizona prisoners were required to file for review in the supreme court prior to seeking federal habeas relief because they had a right to *petition* for review and such review was thus "available." *Jennison v. Goldsmith*, 940 F2d 1308, 1310 (9th Cir 1991) (so stating). After *O'Sullivan*, however, the Ninth Circuit reversed itself:

> "[T]he Arizona Supreme Court has announced that, in cases not carrying a life sentence or the death penalty, review need not be sought before the Arizona Supreme Court in order to exhaust state remedies. Thus, post-conviction review before the Arizona Supreme Court is a remedy that is 'unavailable' within the meaning of *O'Sullivan*.
>
> "* * * * *

*"O'Sullivan* recast the manner by which we must ascertain whether state appellate procedures are 'available' for exhaustion purposes. The import of *O'Sullivan* is that exhaustion is not required when a state declares which remedies are 'available' for exhaustion. Arizona has done so."

*Swoopes v. Sublett,* 196 F3d 1008, 1010-11 (9th Cir 1999), *cert den,* 529 US 1124 (1999) (footnote omitted). The Ninth Circuit held that, because *Sandon* had announced that review was not "available," the prisoner in *Swoopes* was "not required to file a petition for review before the Arizona Supreme Court to exhaust his claims for federal habeas purposes * * *." *Id* at 1011. As we mentioned earlier, the Arizona Supreme Court had based its holding in *Sandon* on its status as a court of discretionary review and on the fact that a petitioner had no right to receive such review. The Supreme Court in *O'Sullivan* explicitly had *rejected* the argument that endowing a court with discretionary review made review unavailable, "without more." *O'Sullivan* also had held that discretionary review remained "available" when a petitioner had a right to *seek* it, even if he or she had no right to *receive* it. Nonetheless, the Ninth Circuit understood *O'Sullivan* to permit a state supreme court to declare that discretionary review was unavailable, simply by announcing as much in an opinion.

Other federal circuits, faced with similar announcements by state supreme courts, have reached the same conclusion as the Ninth Circuit, based on similar readings of *O'Sullivan. See Randolph v. Kemna,* 276 F3d 401, 404 (8th Cir 2002); *Adams v. Holland,* 330 F3d 398, 402-03 (6th Cir 2003), *cert den,* 541 US 956 (2004); *Lambert v. Blackwell,* 387 F3d 210, 233 (3d Cir 2004), *cert den,* 544 US 1063 (2005).[13]

---

[13] *Randolph* dealt with an order of the Missouri Supreme Court, providing that "[t]ransfer by this Court is an extraordinary remedy that is not part of the standard review process for purposes of federal habeas corpus review." 276 F3d at 404.

*Adams* dealt with a rule of the Tennessee Supreme Court, providing that " 'when [a post-conviction] claim has been presented to the Court of Criminal Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies available for that claim.' " 330 F3d at 401 (quoting Tennessee Supreme Court Rule 39).

*Lambert* dealt with an order of the Pennsylvania Supreme Court, providing that in post-conviction cases, "a litigant shall not be required to petition for

*But see Hills v. Washington*, 441 F3d 1374, 1377-79 (11th Cir 2006) (Carnes, J., concurring) (expressing doubts about the validity of those holdings).

Petitioner asks us to follow the lead of the Arizona Supreme Court and other state courts and declare that, "under existing law, review in this Court is an extraordinary remedy not 'available' for all classes of cases." Petitioner argues that discretionary review by this court is not part of the standard appellate process for *Balfour* petitioners, or for petitioners asserting primarily fact-based claims, or for post-conviction petitioners in general, because this court limits its review to cases that present legal questions of broader significance.

For two reasons, we decline petitioner's request. The first reason is that, under our existing rules, discretionary review appears to be "available" to post-conviction petitioners, at least as that word was used in *O'Sullivan*. *O'Sullivan* held that discretionary review is available as long as a litigant has a right to *petition* for such review, even if the litigant has no guarantee of *receiving* it. ORS 2.520 provides that "[a]ny party aggrieved by a decision of the Court of Appeals may petition the Supreme Court for review * * *." ORAP 9.05 likewise, permits "[a]ny party seeking to obtain review of a decision of the Court of Appeals" to file a petition. Those statutes and rules do not exclude *Balfour* litigants, petitioners asserting primarily fact-based claims, or post-conviction petitioners. *Any* party who wishes to seek review in this court may do so in accordance with the rules of appellate procedure. Accordingly, review in this court apparently is "available" in all classes of cases, in the sense that *O'Sullivan* used that term.

We acknowledge that, although review appears to be "available" for post-conviction petitioners under *O'Sullivan*, there is some question as to whether it is available in a practical sense. First, this court has a long list of criteria that it uses when it determines whether it will allow review of a

---

rehearing or allowance of appeal following an adverse decision by the Superior Court in order to be deemed to have exhausted all available state remedies respecting a claim of error." 387 F3d at 233.

case. This court considers whether the case "presents a significant issue of law," whether the issue presented "arises often," whether a decision in the case would affect many people, whether the legal issue is one of state law, and so forth.[14]

---

[14] ORAP 9.07 provides:

"The Supreme Court considers the items set out below to be relevant to the decision whether to grant discretionary review. These criteria are published to inform and assist the bar and the public. They are neither exclusive nor binding. The court retains the inherent authority to allow or deny any petition for review. A petition for review may refer to those items that are relevant to the case and need not address each listed item.

"(1) Whether the case presents a significant issue of law. A significant issue of law may include, for example:

"(a) The interpretation of a constitutional provision,

"(b) The interpretation of a statute,

"(c) The constitutionality of a statute,

"(d) The legality of an important governmental action,

"(e) The use or effect of a rule of trial court procedure,

"(f) The jurisdiction of the Court of Appeals or the trial court, or

"(g) The application or proposed modification of a principle of common law.

"(2) Whether the issue or a similar issue arises often.

"(3) Whether many people are affected by the decision in the case. Whether the consequence of the decision is important to the public, even if the issue may not arise often.

"(4) Whether the legal issue is an issue of state law.

"(5) Whether the issue is one of first impression for the Supreme Court.

"(6) Whether the same or a related issue is pending before the Supreme Court.

"(7) Whether the legal issue is properly preserved, and whether the case is free from factual disputes or procedural obstacles that might prevent the Supreme Court from reaching the legal issue.

"(8) Whether the record does, in fact, present the desired issue.

"(9) Whether present case law is inconsistent (among Court of Appeals cases, between Court of Appeals cases and Supreme Court cases, or among Supreme Court cases).

"(10) Whether it appears that trial courts or administrative agencies are inconsistent or confused in ruling on the issue that the case presents.

"(11) Whether the Court of Appeals published a written opinion.

"(12) Whether the Court of Appeals was divided on the case.

"(13) Whether the Court of Appeals decided the case en banc.

"(14) Whether the Court of Appeals decision appears to be wrong. If the decision appears to be wrong:

"(a) Whether the error results in a serious or irreversible injustice or in a distortion or misapplication of a legal principle.

The function of this court is to resolve significant issues of law, preferably issues of state law that will arise often, affect many people, and fit the other criteria listed under ORAP 9.07. It is our observation that most post-conviction cases, whether they are filed under ORAP 5.90 or not, do not present issues that meet those criteria. Most post-conviction cases are concerned with specific factual disputes that do not offer this court an opportunity to announce a broadly applicable rule of law.

As a result, this court rarely accepts review of PCR cases. Granted, this court rarely accepts review of most cases. Our internal data show that, in the year 2008, this court considered 1,089 petitions for review and allowed review of 75. In 2007, this court considered 1,286 petitions for review and allowed review of 84. Typically, this court allows review of between six and seven percent of the cases that seek review. For PCR petitions, however, the numbers are much lower. Of the petitions that this court received in 2008, approximately 234 concerned post-conviction cases. This court accepted review of none of those.[15] In light of those facts, one reasonably might wonder whether discretionary review is "available" for PCR petitioners in any meaningful sense of the word. Nonetheless, as we stated earlier, review appears to be "available" under the standard announced in *O'Sullivan*.

---

"(b) Whether the error can be corrected by another branch of government, such as by legislation or rulemaking.

"(15) Whether the issues are well presented in the briefs.

"(16) Whether an *amicus curiae* has appeared, or is available to advise the court."

[15] Prior to 2008, the court has granted review of a PCR petitioner's petition for review only rarely. In one case, this court granted review and reversed the trial court's judgment dismissing the petition for PCR because the petitioner had been afforded no opportunity to be heard before the dismissal. *Ware v. Hall*, 342 Or 444, 154 P3d 118 (2007). This court granted review in three other post-conviction proceedings but, ultimately, affirmed the dismissal of the post-conviction petition. *Peeples v. Lampert*, 345 Or 209, 191 P3d 637 (2008); *Bailey v. Lampert*, 342 Or 321, 153 P3d 95 (2007); *Miller v. Lampert*, 340 Or 1, 125 P3d 1260 (2006).

In two cases, this court granted petitions for review filed by the state in post-conviction proceedings. In *Hinton v. Hill*, 342 Or 222, 149 P3d 1205 (2006), this court affirmed the trial court's decision granting PCR, but reversed the determination by the Court of Appeals that the facts warranted even broader relief. In *Gonzalez v. State of Oregon*, 340 Or 452, 134 P3d 955 (2006), this court reversed a determination by the trial court and the Court of Appeals that the petitioner was entitled to post-conviction relief.

We say "appears to be," however, because in the final analysis, whether review is "available" is a question of federal law. Oregon's statutes, case law, and rules of procedure are silent on the subject. That is the second reason that we decline petitioner's request. Whether a prisoner has exhausted his state remedies in compliance with 28 USC § 2254(c) is not a matter that this court addresses. It is a question of federal habeas corpus law.

We acknowledge that the Ninth Circuit effectively has held otherwise in *Swoopes* by allowing the Arizona Supreme Court to declare that discretionary review is unavailable for federal exhaustion purposes. The Ninth Circuit holds that the import of *O'Sullivan* is "that exhaustion is not required when a state declares which remedies are 'available' for exhaustion." *Swoopes*, 196 F3d at 1011. According to that view, "the question of what constitutes the body of 'available state remedies' is one of state law, not one of federal law * * *." *Adams*, 330 F3d at 403. *O'Sullivan* requires state prisoners to file petitions for post-conviction relief in state supreme courts of discretionary review, to exhaust their state remedies. However, as the Ninth Circuit and other circuits read it, *O'Sullivan* also permits those state supreme courts to say "thanks, but no thanks" to the resulting increase in PCR petitions, by simply declaring that review is unavailable. *Hills*, 441 F3d at 1377-78 (using that phrase to describe the federal circuits' reading of *O'Sullivan*).

We also have noted, in the past, that the Ninth Circuit has required state prisoners to file PCR petitions with this court to obtain federal habeas review. The Ninth Circuit imposed that requirement in *Batchelor v. Cupp*, 693 F2d 859 (9th Cir 1982). Prior to *Batchelor*, a tacit agreement existed between the Oregon Public Defender's office and the Attorney General's office. Under that agreement, the Public Defender would not seek discretionary review after the Oregon Court of Appeals ruled against a petitioner in a collateral criminal appeal. The Attorney General, in turn, would not argue in federal habeas cases that the petitioner had failed to exhaust state remedies by failing to present his claims to the Oregon Supreme Court. *Id.* at 861.

In *Batchelor*, the Ninth Circuit chose to strike down that agreement as inconsistent with federal law. The Ninth Circuit described the Attorney General's argument as follows:

> "The Attorney General asserts that the Oregon Supreme Court is a policy-making court, not an error-correcting court, and that it would be inappropriate to require the Oregon Supreme Court to review a large number of petitions in criminal matters to uncover mere trial errors, even those of constitutional magnitude."

*Id.* at 862. The Ninth Circuit then rejected that argument:

> "Oregon places great value upon limiting the Oregon Supreme Court's workload, but the public defender should not be a broker for the cases that will or will not be presented to the Oregon Supreme Court. Public defenders' responsibility to represent their clients forcefully cannot be diluted by an option not to seek review of 'unimportant' cases. Any system that would vest in the public defender an option to bypass state Supreme Court review deliberately while retaining the possibility of federal habeas corpus review is inconsistent with § 2254.

> "We are confident that Oregon can employ creative summary procedures so that state prisoners may present their federal constitutional claims to the Oregon Supreme Court before coming to federal court. In the future, the exhaustion requirement of § 2254 will not be deemed satisfied until the petitioner demonstrates that his claim has been presented to the state's highest court, or that no state remedy is available and that the nonavailability was not caused by a deliberate bypass."

*Id.* at 863.

This court opined that the result of the decision in *Batchelor* was, in the words of the *O'Sullivan* Court, an "increased, unwelcome burden":

> "The decision in *Batchelor* has resulted in a flood of 'exhaustion of remedies' petitions for review in this court. Despite the confidence of the Court of Appeals for the Ninth Circuit that 'Oregon can employ creative summary procedures,' it just does not work that way. That decision does nothing but to require useless expenditure of the resources of the people of Oregon. The labor and materials of the

Public Defender, the Attorney General and this court are all uselessly expended in this exhaustion of remedies, which accomplishes nothing more than a delay in bringing to the United States District Court for the District of Oregon whatever the convicted felon intended to assert there following an affirmance of his conviction by the Court of Appeals of the State of Oregon."

*State v. Nail*, 304 Or 359, 362-63, 745 P2d 415 (1987).

In *Nail*, this court expressed sentiments that are similar to those expressed by the Arizona Supreme Court in *Sandon*. Those are sentiments that we still hold. This court still predominantly uses its discretionary review authority to address, in the words of ORAP 9.07, "significant issue[s] of law," not matters that involve mere error correction. Consequently, we still maintain that there is very little value in assuming, as the federal "unavailable remedy" principle seems to assume, that, despite the criteria in ORAP 9.07, this court will review large numbers of PCR petitions for review that raise questions regarding mere trial errors, almost none of which presents significant questions of law. And, we remain doubtful about the utility of requiring state prisoners to present this court with claims that, in almost all cases, do not merit review.

That said, we do not think that, as a state court, we have the power to dictate what a PCR petitioner must do to satisfy the exhaustion requirement, because that requirement is a matter of federal law, to be decided by the federal courts. Put differently, we do not have the power to declare that, under federal law, review is "unavailable"—or, for that matter, "available"—for post-conviction petitioners, *Balfour* litigants, litigants with fact-based questions, or litigants of any other description. We anticipate that petitioner, in light of this court's refusal to grant his request to reframe the certified question, may pursue that line of argument when this case returns to the Ninth Circuit. As we have said, we think that the Ninth Circuit is the appropriate forum for argument as to whether a given Oregon procedure is "available" under *O'Sullivan*. Accordingly, we have undertaken the foregoing discussion of our procedures and case law in the hope that it will be helpful to the Ninth Circuit, if that court chooses to address the issue.

The certified question is answered.